ARROW CONCRETE COMPANY et al., Appellants,

v.

SHEPPARD, Appellee.

[Cite as *Arrow Concrete Co. v. Sheppard* (1994), 96 Ohio App.3d 747.]

Court of Appeals of Ohio,
Gallia County.

No. 93CA29.

Decided Sept. 8, 1994.

748

*Jendonnae L. Houdyshell,* for appellants.

*Brent A. Saunders,* for appellee.

HARSHA, Presiding Judge.

Plaintiffs, Arrow Concrete Company and Arrow Industries Corporation ("Arrow"), appeal the trial court's decision awarding damages to defendant Jason Sheppard for injury caused to his building. Arrow alleges the following assignments of error:

"I. Whether the trial court erred by using damages based upon contract in a tort action.

"II. Whether the award of damages in the amount of $17,464.00 was excessive where testimony indicated Defendant had incurred actual damages in a lesser amount.

"III. Whether the trial court erred in bifurcating the issue of liability and damages where there was no finding by the trial court that the two issues were totally unrelated and the Plaintiff's case was prejudiced."

This appeal arises from the following facts. On May 15, 1991, appellee Jason H. Sheppard ordered concrete from Arrow for a building he was constructing. While delivering the concrete, the agent for Arrow negligently backed into the partially constructed building, causing various damage to the structure. The parties failed to settle their dispute, and Arrow eventually filed suit to recover $2,171.08 for the unpaid delivery of the concrete. Sheppard counterclaimed against Arrow, alleging $23,835 in damages to his building.[1]

On November 15, 1992, a trial was held on the issue of liability only. The trial court bifurcated the hearing, with no objection from either party, finding it would be more expedient to decide first whether Arrow had caused any damage to the structure, and then decide later the amount of appropriate compensation. On September 18, 1992, a journal entry was filed finding Arrow had caused damage to the building, and further ordering a structural engineer to view the building before taking testimony on damages.

The hearing regarding damages was held before a different judge on October 8, 1993. The trial court vacated the previous journal entry to the extent that it required a structural engineer to view the building, and simply heard testimony on the issue of damages. The trial judge found that Arrow had caused $17,464 worth of damages to Sheppard's building, and then offset that amount by the $2,171.08 Sheppard owed Arrow for the concrete. Arrow now appeals this award.

---

1. Specifically, appellee's complaint alleged the following damages:

| | |
|---|---|
| Damage to steel structure and pilasters | $4,500 |
| Damage to the block work | 2,500 |
| Realigning the columns and trusses | 2,880 |
| Concrete | 3,500 |
| Remove old concrete | 2,500 |
| Refinish concrete | 1,500 |
| Steel cable | 476 |
| Clips and thimbles | 25 |
| Two Come–A–Longs | 90 |
| Straighten steel columns | 864 |
| Construction delay (5 mos. × $1,000) | 5,000 |

■ Arrow's first two assignments of error challenge the court's findings regarding damages. Damage awards will not be overturned if supported by some competent, credible evidence. See *Oak Hill Invest. Co. v. Jablonski* (1992), 78 Ohio App.3d 643, 649–650, 605 N.E.2d 998, 1002, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *Baum v. Augenstein* (1983), 10 Ohio App.3d 106, 10 OBR 129, 460 N.E.2d 701.

■ Further, the measure of damages generally awarded in cases involving injury to real property has been set forth by the Ohio Supreme Court:

"[T]he measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure." *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356, paragraph five of the syllabus.

Consequently, Ohio courts have recognized that in cases such as this, in which the party has been able to repair injury to a building, the proper measure of damages will usually be the reasonable costs necessary to restore the structure. See, *e.g., Platner v. Herwald* (1984), 20 Ohio App.3d 341, 20 OBR 445, 486 N.E.2d 202; *Adcock v. Rollins Protective Serv. Co.* (1981), 1 Ohio App.3d 160, 1 OBR 471, 440 N.E.2d 548; *Florea v. Nationwide Mut. Ins. Co.* (Jan. 28, 1983), Montgomery App. No. 7908, unreported, 1983 WL 5030. We must now determine whether the trial judge's award was in accordance with the law and supported by the evidence.

The trial judge found with regard to damages as follows:

"1. First, the repair of the truss and the resulting concrete damage. The Court finds that the testimony supports this claim. The architect's testimony indicated that this was the only method to make the repair from this damage. Further, Plaintiffs' witness confirms this. Thus, the Court finds this item of damage in the amount of $12,464.00.

"2. Secondly, the building needed to be brought into square. The Court finds for the Defendant in the amount of $5,000.00. This figure includes the concrete block that needed to be removed and replaced.

"3. The third item of damage is construction delay. The Court finds that this claim is not meritorious. In any contract the Defendant has an obligation of mitigating damage. The court does not find from the evidence in this case that the Defendant was delayed in this matter by Plaintiffs.

"Thus, the Court finds that the Defendant is entitled to the sum of $17,464.00 as to damage in this case. The parties agreed that the Plaintiff was entitled to a setoff of $2,171.08 and the lien is to be canceled. The amount of judgment the Defendant is entitled to is $15,292.92."

Appellants' first assignment of error claims that the court used the wrong measure of damages because the court, at one point in the judgment entry, referred to the action in terms of breach of contract rather than negligence. However, it is obvious that the court attempted to give the appellee the reasonable costs to repair the damage done to his building. As a result, we find no legal error in the measure of damages used by the trial court, and overrule appellants' first assignment of error.

Appellants' second assignment of error claims that the trial court over-compensated appellee based on the evidence produced at trial. In support of this assertion, appellants point to the fact that appellee testified that he had incurred only $10,000 to $11,000 in out-of-pocket expenses. Appellee also admitted that for those repairs he performed himself, he measured his damages by multiplying the hours he worked by $60, the amount he would have been paid by a third person for similar labor. However, although appellee charged $60 an hour when he did such repairs for others, he testified that when he did his own repairs, he only paid one or two employees $5 to $10 per hour.[2]

Essentially, appellants argue that allowing appellee to recover any more than his out-of-pocket labor costs would give him a windfall, because he would be put in a better position than he was prior to the accident. We do not agree. As stated above, appellee is entitled to recover the reasonable costs of his repair. See *Ohio Collieries Co., supra.* There is nothing in the record to show, and appellants do not argue, that $60 per hour for this type of repair work was an unreasonable rate. As a result, we believe that regardless of whether appellee hired a third party to do the work or performed the work himself, he is entitled to the same recovery: the reasonable cost of repair. As there is no evidence that $60 an hour was an unreasonable rate, we reject appellants' argument on this issue.[3]

---

2. Appellee alleged that he spent forty-eight hours repairing the columns and trusses, for a total of $2,880 worth of damage to those items. Appellants argue appellee should receive $480, the estimated labor cost appellee gave to his employees.

3. Further, appellants' argument would require us to find that although appellee's employees could be compensated for the time they spent performing the repairs, the appellee himself could not. In other words, we would be forced to hold that appellee's "spare" time is worthless, *i.e.*, it has no reasonable value. We refuse to make such a finding.

■ Appellants next contend that the appellee was overcompensated because the trial court allowed him to recover twice for the same damages. Specifically, appellants argue that the trial court mistakenly granted appellee damages for bringing the building back into square as well as repairing the trusses, when repairing the trusses and bringing the building back into square constituted the same damage. Appellants' claim thus essentially challenges whether the trial court's ruling was supported by competent, credible evidence.

The trial court awarded $12,464 for the concrete and truss damage. The court then awarded $5,000 to bring the building back into square. At trial, the appellee produced the following evidence concerning damages: (1) $10,642 to replace the concrete floor, (2) $4,500 damage to the steel structures and pilasters, (3) $2,500 for block work on the building, (4) $2,880 for realigning the columns and trusses, and (5) $5,000 for construction delay. The total damages alleged by appellee at trial thus totalled $25,522. Appellants did not offer any alternative damage figures.[4]

The trial court expressly held that the construction delay claim was without merit. However, the rest of the trial court's order is simply too vague to determine what portions of the appellee's damages the court found persuasive. Although the court found that the appellee could recover $12,464 for concrete and truss damage, none of the figures submitted by the appellee could possibly lead to this result.[5] Further, the court also awarded $5,000 to bring the building back into square, an amount which included the extra block work which had to be performed. However, the appellee offered no evidence regarding a damage claim for generally "bringing the building back to square," and none of the evidence offered by appellee justifies a figure of $5,000.[6]

As a result, we are forced to find that the trial court's damage award is not supported by competent, credible evidence. *Oak Hill Investment Co., supra,* 78 Ohio App.3d at 649–650, 605 N.E.2d at 1002. We note that our holding does not necessarily indicate that the trial court overcompensated appellee or allowed for a

---

4. Appellee's evidence consisted primarily of his testimony. The appellee offered a written estimate for the concrete damage. However, no other documents or receipts were admitted into evidence for the other damage claims.

5. The appellee offered uncontradicted evidence that the cost to replace the concrete would be $10,642. Appellee then testified that realigning the columns and trusses cost $2,880. If the court accepted these amounts, the total damage would be $13,522. There is simply no evidence offered for the court's figure.

6. The appellee testified to $2,500 worth of block damage and $4,500 worth of damage to the steel structures and pilasters. Without any explanation, the court somehow reached an award of $5,000. None of the evidence offered by either appellee or appellants supports this number.

double recovery.[7]  We simply find that the specific amounts awarded by the trial court are not supported by any of the damage figures offered by appellee, or by any alternate figures offered by the appellants.  We therefore sustain appellants' second assignment of error and remand for purposes of recalculating the damage award.

Appellants' third assignment of error alleges that the first trial judge committed reversible error by bifurcating the trial into separate hearings regarding liability and damages.  However, appellants never objected to the bifurcation at the trial court level, and have thus waived their right to now challenge the court's action on appeal.  *State v. Jenkins* (1984), 15 Ohio St.3d 164, 225, 15 OBR 311, 363–364, 473 N.E.2d 264, 315–316; *In re Carroll* (1985), 28 Ohio App.3d 6, 28 OBR 15, 501 N.E.2d 1204.  Further, we note that the bifurcation of proceedings is a matter within the sound discretion of the trial court.  Civ.R. 42(B); *Heidbreder v. Trustees* (1979), 64 Ohio App.2d 95, 18 O.O.3d 78, 411 N.E.2d 825.  Appellants have not demonstrated any harm from the separate hearings, and we cannot find any reason to find that the trial judge abused his discretion in this matter.  Appellants' third assignment of error is thus overruled.

However, having found the judgment award to be unsupported by the evidence, we reverse and remand for a redetermination of damages.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETER B. ABELE, J., concurs.

GREY, J., concurs in part and dissents in part.

GREY, Judge, concurring in part and dissenting in part.

I concur in part and dissent in part.

I would affirm the judgment *in toto*.  The testimony in this case was often vague and imprecise.  Wallace spoke of repairing the damage for $500 to $1000.  Epling talked about costs of $10,000 to $11,000.  Saxon was quite precise, but the weight to be given to his testimony, or any part of it, was for the trial court to decide.  The award of damages is within the range of testimony as to costs contained in the record, and unchallenged by a request for findings of fact.

---

7.  In fact, if the trial court found all of the appellee's damage claims to be credible except for the delay, the trial court should have awarded $20,522, especially in light of the fact that appellants offered no alternate amounts.  If the court found other damage claims in addition to the delay to be unsupported by the evidence, then the court should simply have refused to grant recovery for those items as well.

I would afford to this judgment the presumption of validity usually afforded to judgments, and affirm the decision of the trial court.