DAWN COURT ASSOCIATES et al.

v.

CRISTIA, d.b.a. D&S Construction.

Court of Common Pleas,
Medina County.

No. 00–CIV–0304.

Decided Aug. 23, 2001.

*Kenneth R. Goldberg,* for plaintiffs.

*Frank Mazgaj,* for defendant.

JAMES L. KIMBLER, Judge.

### Statement of the Case

The plaintiffs, Dawn Court Associates et al., sued the defendant David Cristia, d.b.a. D & S Construction, in the Medina County Court of Common Pleas in 1998. In his answer, defendant alleged a Civ.R. 12(B)(5) defense of insufficiency of service of process. When the case was called for trial, the court reviewed the pleadings and determined from the file that the defense was well taken. It then granted the defendant's motion to dismiss.

In April 2000, plaintiffs refiled their complaint. In this complaint, they set forth three causes of action. In Count I they alleged breach of contract, in Count II they alleged negligence by the defendant in performing roof repairs, and in Count III they alleged unjust enrichment.

On June 20, 2001, the case was tried to the court. At the conclusion of plaintiffs' case, defendant moved for a dismissal of the case pursuant to Civ.R. 41(B)(2). The court granted the motion. Within the time mandated by Civ.R. 52, plaintiffs moved for findings of fact and conclusions of law. The court ordered the attorneys for the parties to submit proposed findings of fact and conclusions of law. The court reviewed those proposals. It now issues its findings of fact and conclusions of law in this judgment entry.

### Findings of Fact

Plaintiffs are involved in buying and managing apartment buildings. The managing partner of plaintiffs is a former executive of a company that manufactured prefabricated apartment buildings. That company was called "Cardinal Industries." It is no longer in business as a manufacturer of such prefabricated

buildings. When it was operating, it was one of the largest manufacturers of such buildings in the United States.

It is alleged that Cardinal-built apartment buildings had problems in their roofs. These problems consisted of depressions in the roof and build up of moisture in the area between the roof and the ceilings of the apartments. The depressions lead to water backing up and getting under the shingles, causing leaks in the roof. The build up of moisture leads to a black mold forming on the rafters of the buildings. The mold is an indicator of moisture problems in the roofs caused by lack of proper ventilation. These moisture problems can lead to leaks in the ceilings of the apartment buildings.

In 1981, Cardinal built prefabricated apartment buildings that were delivered to Medina, Ohio. These apartment buildings were called "Dawn Court Apartments." In late 1994, Royal Estate Management Corporation ("Royal Estate"), the real estate management company that managed the apartments for plaintiffs, wanted to repair several apartment buildings' roofs. Plaintiffs gave Royal Estate permission to contract for the roof repairs. The management company, acting as the agent for plaintiffs, contacted defendant about repairing the roofs.

Defendant submitted a proposal that called for him to remove and replace shingles and put down new felt paper underneath the shingles, where needed. The proposal also called for removal and replacement of fascia boards and masonite sheeting, where needed. Under the proposal, defendant would receive different amounts for three-unit buildings, for two-unit buildings, and for removal and replacement of fascia boards and sheeting.

Royal Estate, on behalf of plaintiffs, accepted the proposal. Under the terms of the proposal, the entire contract price was $29,398.34. One half was paid in December 1994 and the other half was to be paid upon completion.

In February 1995, defendant started the repairs. After tearing the shingles off one of the roofs, defendant realized that the roofs were in worse condition than initially thought. He contacted the agent for Royal Estate, and the parties conferred about the roof repairs. Defendant recommended that plaintiffs replace the roofs. Plaintiffs, through their managing partner, decided that that was too expensive. The representative from Royal Estate and the defendant then decided to attempt to correct the problem by putting down a new layer of shingles over the old shingles.

Defendant subcontracted the work of putting down the new layer of shingles. The work was completed in the spring of 1995, and defendant received all money due on the contract.

In 1997, plaintiffs attempted to sell the property. The prospective buyer informed plaintiffs that it expected a reduction of $96,000 in the purchase price

because of problems with the roofs in the apartment complex. A visual inspection of the roofs in 1997 showed that several roofs had blocked vents and black mold on rafters. Not all the black mold, however, was on rafters where the vents were blocked. In addition, there were blocked vents on some roofs, but no black mold.

Plaintiffs and the buyer negotiated a reduction in the selling price of $48,000. Plaintiffs then filed this lawsuit. Although there were three counts in the complaint, all of them alleged a failure to perform in a workmanlike manner.

At trial, plaintiffs produced no evidence regarding the value of the property with the roofs in the condition they were in when the defendant finished work on the project as compared to the value the apartment buildings would have had if the defendant had performed as the plaintiffs wanted. They presented no evidence that established that the defendant violated any duty of performing in a workmanlike manner. They presented no evidence establishing that but for the failure of the defendant to perform in a workmanlike manner, the plaintiffs would not have suffered the damages they allege in their complaint. They presented no evidence that the amount they claim was spent in repair by a second contractor was reasonable.

## Conclusions of Law

■ In every contract for the future performance of construction services, an implied duty is imposed upon an independent contractor to perform services in a workmanlike manner. *Vistein v. Keeney* (1990), 71 Ohio App.3d 92, 104, 593 N.E.2d 52, 60.

■ An action against a contractor for breach of this duty is an action that sounds in tort, even though the duty to perform in a workmanlike manner arises out of a contract. *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147, paragraph one of the syllabus.

The statute of limitations for this type of action is the four-year statute set forth in R.C. 2305.09(D). *Velotta, supra.*

■ An action for negligent damage to property begins to run "when it is first discovered, or through the exercise of reasonable diligence it should have been discovered" that there was such damage to property. *Harris v. Liston* (1999), 86 Ohio St.3d 203, 714 N.E.2d 377, paragraph two of the syllabus.

The time period in which to bring a lawsuit against a contractor for failure to perform in a workmanlike manner begins to run when such failure is discovered or through the exercise of reasonable diligence should have been discovered. *Harris, supra*, followed.

■ Filing a civil action and obtaining service within one year commences such an action. Civ.R. 3. However, if an action is filed, but service is not obtained within one year, then the action has not been commenced. Civ.R. 3.

■ If a cause of action is filed and then dismissed and the time set forth in the applicable statute of limitations has not expired, then the plaintiff has until the expiration of the time period set forth in the statute of limitations to refile the action.

■ An expert witness is needed to establish that building repairs were not done in a workmanlike manner. Evid.R. 702. An expert witness is needed because people who are not trained or experienced in construction cannot know whether repairs to a building were done in a workmanlike manner. The expert must testify that it is more probable than not that the building repairs that are the subject of the lawsuit were not done in a workmanlike manner, and that this failure caused the damages sustained by the plaintiff.

■ Where a plaintiff alleges that a contractor failed to perform in a workmanlike manner in repairing an existing building, and the evidence establishes that the building was not rendered inhabitable, the plaintiff may prove damages by establishing the reasonable cost of repair of the building. *Arrow Concrete Co. v. Sheppard* (1994), 96 Ohio App.3d 747, 645 N.E.2d 1310. Plaintiff must establish by expert testimony that any repair cost expended was reasonable. See *Seaboard's Restoration Co., Inc. v. Loyer* (Mar. 2, 1983), Medina App. No. 1179, unreported, 1983 WL 4002.

At the conclusion of the plaintiff's case, a defendant may move for a dismissal pursuant to Civ.R. 41(B)(2). The dismissal will be granted if the plaintiff has not shown any right to relief. Civ.R. 41(B)(2).

## Holdings

Plaintiffs' second complaint, filed April 12, 2000, set forth three causes of action, all of which were time-barred. Further, plaintiffs' failure to offer any expert testimony as to the failure of the defendant to perform in a workmanlike manner meant that plaintiffs had not shown any right to relief on any of their causes of action. Further, plaintiffs' failure to offer any expert testimony as to the reasonableness of the repair cost they incurred for a new roof in 1997 meant that they had not shown any right to relief on any of the three causes of action.

## Discussion

Plaintiffs originally filed their complaint in 1998. They failed to get service on defendant. However, defendant filed an answer setting forth the affirmative defense of insufficiency of service of process. In May 1999, defendant moved to

dismiss the case against him because he was never served. The court granted that motion.

On April 12, 2000, plaintiffs filed their second complaint against defendant. They set forth three causes of action: one was for breach of contract, one was for unjust enrichment, and the third was for negligently damaging the property. All of them, however, were based on the failure of the defendant to perform in a workmanlike manner.

Because the three causes of action were all based on defendant's alleged failure to perform in a workmanlike manner, the applicable statute of limitations is four years and is set forth in R.C. 2305.09(D). *Velotta, supra.* The four-year period began to run when plaintiffs knew or should have known of the alleged failure to perform in a workmanlike manner. *Harris, supra.*

Defendant started his work on the roofs in the early winter of 1995. He completed the work in the early summer of 1995 and was paid for the work. The first question is when did plaintiffs know or should have known of the alleged failure?

Plaintiffs' officers were very familiar with the construction of Cardinal-built homes. Their witness testified that moisture problems are common in Cardinal-built buildings. In fact, he testified that his only customer for his contractor services are the plaintiffs and other companies that manage Cardinal-built properties. He testified that he keeps a four-man crew busy going around repairing Cardinal-built roofs.

Because of the knowledge that plaintiffs' officers possess about roof problems in Cardinal-built homes, this court finds that by the end of 1995 the plaintiffs should have known of the alleged failure of the defendant to perform the roof repairs in a workmanlike manner. This means that plaintiffs had until December 1999 to file their complaint.

Clearly, when plaintiffs filed their complaint in 1998 they were within the four-year statute of limitations set forth in R.C. 2305.09(D), but the failure to obtain service within one year of the filing of the complaint meant that they never commenced the first action. Civ.R. 3.

When the first action was dismissed, there were still several months left until the four-year statute of limitations set forth in R.C. 2305.09(D) expired. However, instead of filing the case by the end of 1999, plaintiffs waited until April 2000 to refile their complaint. When they refiled the complaint, they were outside the four-year limitations period set forth in R.C. 2305.09(D). Therefore, there was no right to relief for the causes of action filed against defendant.

■ Notwithstanding the statute of limitations problems, plaintiffs also failed to show that defendant failed to perform in a workmanlike manner. They called an expert witness to testify at trial. However, he was never asked, nor did he volunteer the opinion, that the defendant failed to perform in a workmanlike manner or that any such failure was the cause of the damages sustained by plaintiffs.

■ This court holds that it is necessary to establish by expert opinion testimony that a contractor failed to perform in a workmanlike manner. In this case, the failure was supposedly laying shingles over the vents on the crest of the roofs, thereby blocking airflow. However, the shingles were laid the way they were, because defendant was attempting to correct another problem with the roofs: they were leaking due to depressions in the roofs. Defendant attempted to correct the problem in this manner because plaintiffs would not authorize removal of the roofs. Given the constraints set forth by plaintiffs regarding the removal of the roofs, this court concludes that only an expert witness could have established that the technique used by defendant constituted work not performed in a workmanlike manner.

This court also holds that expert testimony was needed to establish that the failure to perform in a workmanlike manner was the cause of any damages sustained by the plaintiffs. In this case, there was never any attempt to relate the failure to perform in a workmanlike manner to the damages sustained by plaintiffs. No one testified that the alleged failure of the defendant to perform in a workmanlike manner led to the removal and replacement of the roofs. Although there was testimony regarding the condition of the roofs when the second contractor removed and replaced them, no witness connected that condition to the work done by the defendant. Indeed, one witness called by plaintiffs testified that moisture problems, as evidenced by black mold, are common on Cardinal-built properties. This testimony gives rise to the inference that the work done by the defendant may not have contributed to the problems that led to the removal and replacement of the roofs. In any event, the failure to show, by expert testimony, the alleged failure to perform, and then to link up that failure to the damages sustained meant that no right to relief was shown.

■ Further, plaintiffs offered no evidence that the amount paid by them to the second contractor was reasonable. This court believes that when a property owner is suing a contractor for failure to perform in a workmanlike manner, the owner can recover the reasonable cost of repair, provided the owner shows by expert testimony that the cost of repair, in cases where the repairs are already completed, was reasonable. Such failure of proof means that no right to relief was shown.

### Order

For all the reasons set forth above, the court dismisses the complaint against the defendant as to all causes of action set forth therein.

Costs to the plaintiffs.

*Complaint dismissed.*