OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Tim Prawdzik and Sandy Prawdzik, from a judgment of the Franklin County Municipal Court, finding in favor of defendants-appellees, II Enterprises, Inc. ("II Enterprises"), and James Dixon, on appellants' action for alleged wrongful retention of a security deposit, and granting judgment in favor of appellees on their counterclaim.
 {¶ 2} On January 13, 2002, appellants entered into a written "Single Home Rental Agreement" with II Enterprises to occupy, on a month-to-month basis, a residence located at 456 Medwin Place. Appellants rented the residence while their home, which was damaged by fire, was being rebuilt. Appellee Dixon is the owner/landlord of the apartment. Pursuant to the rental agreement, appellants paid a security deposit to appellees in the amount of $1,895.[1]
 {¶ 3} On December 30, 2002, Dixon returned $900 of the security deposit to appellant Tim Prawdzik, and appellants vacated the residence on January 6, 2003. On March 19, 2003, appellants sent Dixon a letter requesting the remainder of the security deposit.
 {¶ 4} On June 11, 2003, appellants filed a complaint against appellees, alleging that appellees had wrongfully withheld $995 of the original $1,895 security deposit. Appellants sought to recover double the $995 amount, pursuant to the provisions of R.C. 5321.16(C), as well as an award of attorney fees.
 {¶ 5} On July 15, 2003, appellees filed an answer and counterclaim. In the counterclaim, appellees alleged that appellants/tenants had caused substantial damage to the residence, beyond normal wear and tear, requiring appellees to incur expenses in the amount of $1,562.04 to repair the damages. Appellees sought damages in the amount of $567.04 (based upon applying the remaining security deposit to offset the claimed damage expenses).
 {¶ 6} The matter came for trial before the court on September 18, 2003. At the close of the evidence, appellees amended their counterclaim to request damages in the amount of $397.04 rather than $567.04. The trial court made a finding from the bench that appellants had failed to prove their claim by a preponderance of the evidence. The court further found in favor of appellees on their counterclaim, and by judgment entry filed September 23, 2003, the trial court entered judgment in favor of appellees in the amount of $397.04.
 {¶ 7} On appeal, appellants set forth the following three assignments of error for review:
I. The Trial Court erred when it found that Appellants/Tenants was not entitled to the return of his security deposit, double damages, and attorney fees.
II. The Trial Court erred when it found that Appellees/Landlords had proved damages in the amount of $397.04 to the rented premises by preponderance of the evidence.
III. The Trial Court erred when it failed to consider the extra $1,100.00 that Appellants/Tenants paid in rent over the term of their lease so that they could have dogs as an extra wear and tear allowance.
 {¶ 8} Appellants' assignments of error are interrelated and will be considered together. As noted, appellants' action was brought pursuant to R.C. 5321.16, which allows tenants to recover an award of double damages and attorney fees for a wrongfully withheld security deposit. R.C. 5321.16 provides, in relevant part, as follows:
(B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorney fees under division (C) of this section.
(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorney fees.
 {¶ 9} Courts have held that "the main purpose of the penalty provision of [R.C. 5321.16] is to enable a tenant to recover the wrongfully withheld portion of his security deposit at no cost to himself." Berlinger v. Suburban Apt. Mgmt. Co. (1982),7 Ohio App.3d 122, 125. Thus, such provision of the Landlords and Tenants Act was "`designed to ensure the return of a security deposit at no cost to the tenant in cases where the security deposit has been wrongfully withheld.'" Id., quoting Sherwin v.Cabana Club Apartments (1980), 70 Ohio App.2d 11, 17.
 {¶ 10} In addition to a tenant's right to statutory damages and attorney fees, "Subsection (B) permits the landlord, upon termination of the rental agreement, to apply the security deposit in payment of any past due rent and for damages the landlord may have suffered by reason of the tenant not having complied with the requirements of R.C. 5321.05." Vardeman v.Llewellyn (1985), 17 Ohio St.3d 24, 27. Further, "the failure to comply with R.C. 5321.16(B) and to provide the tenant with a list of itemized deductions renders the landlord liable for double damages only as to the amount wrongfully withheld and not as to the entire amount of the security deposit." Id. at 29.
 {¶ 11} We will initially address appellants' contention that appellees are not entitled to recover damages under the counterclaim because they failed to present evidence as to the difference in the market value of the premises before and after appellants moved out (i.e., the difference in value of the property before and after the injury, or diminution in value). Appellants maintain the trial court had insufficient evidence to determine whether or not the restoration costs sought by appellees exceeded the diminished value of the property.
 {¶ 12} In support, appellants rely upon Ohio Collieries Co.v. Cocke (1923), 107 Ohio St. 238, 248-249, in which the Ohio Supreme Court held:
If the injury is of a permanent or irreparable nature, the measure of damages is the difference in the market value of the property as a whole, including the improvements thereon, before and after the injury. If the injury is susceptible of repair, the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure.
 {¶ 13} It has been noted that "more recent cases have refined the rule stated in Ohio Collieries," and that "[t]he diminution in fair market value no longer serves as an absolute limit to the recovery of damages." Horner v. Whitta (July 27, 2000), Seneca App. No. 13-99-64. See, also, Arrow Concrete Co. v. Sheppard
(1994), 96 Ohio App.3d 747, 750 ("Ohio courts have recognized that in cases * * * in which the party has been able to repair injury to a building, the proper measure of damages will usually be the reasonable costs necessary to restore the structure"); G L Investments v. Designer's Workshop, Inc. (June 26, 1998), Lake App. No. 97-L-072 ("[w]hen the case involves temporary damage to real property, which is to say damage that may be abated by the actions of the wrongdoer or the injured party, the court may award damages in the amount of the reasonable cost of repair or replacement"), citing Arrow Concrete, supra;Montgomery v. Proper (Feb. 14, 1997), Huron App. No. H-96-019 ("[w]here a party can repair the injury to the property, the proper measure of damages may be the reasonable cost of restoration, i.e. costs which are not grossly disproportionate to the value of the property").
 {¶ 14} Thus, in Curtis v. Vazquez, Ashtabula App. No. 2003-A-0027, 2003-Ohio-6224, at ¶ 28-30, in which a landlord sought damages for the cost of repairing damage to the interior of an apartment, the court held:
Requiring, as a rule, a landlord to submit evidence regarding the pre-injury and post-injury market value of a rental property is impractical. In many cases, landlords are seeking to repair the apartment in order to re-rent the unit. It is unreasonable to require them, as a concrete rule, to expend the financial resources to submit expert testimony regarding the pre-injury and post-injury market value of the property. In some cases, this cost may even exceed the cost to repair the damage!
This holding does not detract from the general rule set forth in Ohio Collieries Co., that a property owner is only entitled to the lesser of the cost of repair and the difference in market value. However, the defendant may produce evidence of the difference in market value. In addition, the defendant may move the court to require the plaintiff to produce such evidence. Then, at the trial court's discretion, the plaintiff may be required to produce evidence regarding pre-injury and post-injury market value.
In a case such as this, the defendant has the opportunity, through cross-examination, to question the reasonableness of the plaintiff's expenditures for repair. Finally, if the trier of fact believes the evidence regarding the cost of repair has been inflated, the trier of fact always has the discretion to adjust the damages accordingly.
See, also, Hart v. Pervan, Cuyahoga App. No. 79915, 2002-Ohio-6219 (landlord could recover from tenant the cost of repairing damage by tenant without presenting evidence of decrease in market value of leased premises).
 {¶ 15} In the present case, appellees presented evidence of extensive damage done to the residence by two large dogs (rottweilers) that appellants kept on the premises. The landlord, Dixon, testified that the tenants did not let the dogs outside, and that the damage caused by the animals running through the house was more than the normal wear and tear. Dixon noted the presence of "feces all over the basement, which Mr. Prawdzik, I asked him about, he said he didn't want to let his dogs out[.]" (Tr. 23.) While Prawdzik had attempted to clean the property, there were "still stains everywhere from that." (Tr. 23.) Further, although Prawdzik had assured him that "he had something that would take care of the dog urine and feces that was left on the ground or stains from this * * * that didn't work. So I had to have someone come in and clean it again." (Tr. 24.)
 {¶ 16} The landlord's maintenance worker, Greg Armstrong, testified that he would normally use approximately two gallons of paint to touch up a residence; in the instant case, however, Armstrong used nine gallons of paint to restore the premises. Armstrong stated that the basement "was a bigger problem with the smell." (Tr. 35.) Armstrong also had to repair a hole in one of the doors. He testified that typical costs to restore a property after the end of a tenancy, in the case of normal wear and tear, would be approximately $170.
 {¶ 17} At trial, appellees presented two invoices, in the amounts of $1,412.04 and $150 respectively, for cleaning costs associated with the premises. The trial court concluded that appellants owed appellees $397.04 on the counterclaim, representing the total cost of repairs, less the cost of normal wear and tear and the portion of the unreturned security deposit. We note that appellants did not object to appellees' evidence regarding cost of repair, and we agree with appellees that appellants did not contend at trial that the cost of repair was disproportionate to the diminution in value of the property. Upon review, we conclude that there was competent, credible evidence to support the court's award, and that the court did not err in allowing appellees to recover the reasonable cost of the repairs as an appropriate measure of damages. Arrow Concrete, supra.
 {¶ 18} Further, because the evidence supports the trial court's finding that the amount of damages was in excess of the unreturned deposit amount, appellees did not wrongfully withhold any portion of the security deposit, and, thus, appellants were not entitled to double damages or attorney fees pursuant to R.C.5321.16(C). Vardeman, supra, at 29.
 {¶ 19} Finally, we find no merit to appellants' contention that the trial court erred in failing to consider evidence that appellants paid an additional $100 per month for additional wear and tear resulting from the presence of the dogs. More specifically, appellants maintain that there was evidence presented that the rent for the premises would normally have been $1,795 per month, but that appellants paid an additional $100 per month because of the dogs.
 {¶ 20} In response, appellees argue that the language of the lease does not support this contention and, upon review, we agree that the lease contains no provision regarding an additional $100 per month charge for pets. Rather, the lease agreement states in pertinent part: "Lessee agrees to pay without demand the rental of $1895.00 per month." The agreement further provides that lessee "has deposited with the Lessor a security deposit of $1895.00," the purpose of said deposit "to guarantee the return of the premises to the Lessor in the same or better condition as when accepted by the Lessee, reasonable wear excepted," and to "indemnify the Lessor against the damage or loss of value as a result of the Lessees action, mistake or inaction during the term of the occupancy." Accordingly, we find unpersuasive appellants' contention that the trial court erred in failing to find appellants paid an additional $1,100 in rent to keep the dogs at the apartment.
 {¶ 21} Based upon the foregoing, appellants' first, second and third assignments of error are overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] The landlord, Dixon, testified that the security deposit was actually paid by "ExecuStay by Marriott."