DECISION ANDJUDGMENT ENTRY
{¶ 1} Greenfield Meadows Associates and Thomas Kendall Short separately appeal the judgment of the Highland County Common Pleas Court involving a construction contract.
 {¶ 2} The trial court declined to award Greenfield damages on its counterclaim alleging that Short breached the construction contract. On appeal, Greenfield contends that the trial court erred by determining that the proper measure of damages is the diminution in value, instead of the cost to repair. Because unreasonable economic waste would occur if the trial court awarded Greenfield the cost to repair, we disagree. Greenfield further contends that the trial court's judgment to not award it damages is against the manifest weight of the evidence. Because competent, credible evidence supports the trial court's finding, we disagree. *Page 2 
 {¶ 3} Short contends in his separate appeal that the trial court improperly interpreted the contract specifications regarding his duty to plant grass. Because the trial court correctly interpreted the plain, unambiguous language of the contract provisions requiring that Short use dirt in which grass would grow, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 4} In April of 2004, Short entered into a construction contract with Greenfield. Short agreed to remove existing asphalt and replace it with new concrete. In May of 2004, Short completed the work. Greenfield paid Short $6,300 less than the contract price because it believed that Short failed to properly restore the grassy areas.
 {¶ 5} Short filed a mechanic's lien against Greenfield's property for $6,300. Subsequently, he filed a complaint to foreclose upon its mechanic's lien. Greenfield filed a counterclaim alleging that Short failed to perform in a workmanlike manner and that he negligently performed the work. Greenfield alleged that the concrete began deteriorating the winter after Short completed the work. Greenfield sought damages for the cost to replace the concrete, which was over $40,000.
 {¶ 6} At the bench trial, the parties presented conflicting evidence as to the cause of the concrete's deterioration. Short presented evidence that a severe winter, salt, and Greenfield's failure to seal the concrete caused the damage to the concrete. Greenfield presented evidence that Short failed to properly finish *Page 3 
or cure the concrete. One of Greenfield's experts testified that the proper remedy was to remove the concrete and replace it at a cost of $40,997.
 {¶ 7} At the end of the trial, the court determined that Short did not perform the grass contract specification in a workmanlike manner in that he did not use proper dirt. The court noted that Short requested $6,300, and Greenfield owed Short $6,000 to properly repair the grass. Therefore, it concluded that Greenfield owes Short $300. The court also found that Short failed to install the concrete in a workmanlike manner. The court stated that, for some reason, the original curing of the concrete was not adequate. However, the court determined that the damage was only cosmetic. As a result, the court found that the proper measure of damages is the current value of the premises as opposed to the property's value had the job been satisfactory. However, because Greenfield failed to present any evidence of the diminution in value, the court declined to award Greenfield damages.
 {¶ 8} Greenfield and Short appeal. Greenfield asserts the following assignment of error. "The trial court erred in failing to award Defendant damages based upon the evidence of damages provided by Defendant." Short raises the following assignment of error: "The trial court erred to the prejudice of cross-appellant/appellee by improperly interpreting the contract and its specifications in a manner detrimental to cross-appellant, notwithstanding the plain terms thereof."
 II. {¶ 9} In its sole assignment of error, Greenfield contends that the trial court erred by failing to award damages on its counterclaim for breach of the duty to *Page 4 
perform in a workmanlike manner. Greenfield contends that the court improperly determined that unreasonable economic waste would result if it were to award damages for removing and replacing the concrete. Greenfield claims that the court should have awarded it $40,997 to repair the concrete.
 A. {¶ 10} Greenfield did not request findings of fact and conclusions of law. Civ.R. 52 provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if there is some evidence in the record to support its judgment. See, e.g., Bugg v.Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, ¶ 10, citingAllstate Financial Corp. v. Westfield Serv. Mgt. Co. (1989),62 Ohio App.3d 657. As the court explained in Pettit v. Pettit (1988),55 Ohio App.3d 128, 130:
 "[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.
 The message is clear: If a party wishes to challenge the* * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already `uphill' burden of demonstrating error becomes an almost insurmountable `mountain.'"
See, also, Bugg; International Converter, Inc. v. Ohio ValleyConverting, Ltd. (May 26, 1995), Washington App. No. 93CA34. *Page 5 
 {¶ 11} Here, the trial court entered a general judgment and Greenfield did not file a Civ.R. 52 request for findings of fact and conclusions of law. The trial court did orally recite its findings at the conclusion of the bench trial. However, because a court speaks only through its journal, we ordinarily will not consider matters that are not carried over into the court's judgment entry. See State v. King (1994),70 Ohio St.3d 158, 162; In re Adoption of Gibson (1986), 23 Ohio St.3d 170, 173, fn. 3; Snouffer v. Snouffer (1993), 87 Ohio App.3d 89, 91; Howard v.Wills (1991), 77 Ohio App.3d 133, 140, fn. 5. Nonetheless, when the interests of justice require a reviewing court to ascertain the basis for the trial court's judgment, then the reviewing court must examine the entire proceedings, including the transcript with the trial judge's comments. See Joyce v. Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 95;A.B. Jac, Inc. v. Liquor Control Comm. (1972), 29 Ohio St.2d 139, paragraph two of the syllabus; see, also, State v. Jenkins,174 Ohio App.3d 374, 2007-Ohio-7180, ¶ 12.
 {¶ 12} Here, even though Greenfield did not request findings of fact and conclusions of law, we will look to the trial court's oral decision to determine the basis for its judgment.
 B. {¶ 13} We will not overturn a trial court's damage award so long as it is supported by some competent, credible evidence. See Arrow ConcreteCo. v. Sheppard (1994), 96 Ohio App.3d 747, 750. This is a manifest-weight-of-the-evidence standard. See C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus (stating that "[a] reviewing court will not reverse a judgment as being *Page 6 
against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case"). When reviewing a claim that a trial court's judgment is against the manifest weight of the evidence, a reviewing court must employ "an extremely deferential standard of review." State ex rel. Pizza v. Strope (1990), 54 Ohio St.3d 41, 45-46
(citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, even "some" evidence is sufficient to sustain the judgment and prevent a reversal. See Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159;Willman v. Cole, Adams App. No. 01CA25, 2002-Ohio-3596, ¶ 24; Simms v.Heskett (Sept. 18, 2000), Athens App. No. 00CA20. Moreover, under this standard, the reviewing court must make every reasonable presumption in favor of the trial court's findings of fact. Myers v. Garson (1993),66 Ohio St.3d 610, 614; Seasons Coal Co.; see, also, Patton v. Moore, Scioto App. No. 03CA2902, 2004-Ohio-3629, at ¶ 12.
 C. {¶ 14} "`[T]he general measure of damages in a contract action is the amount necessary to place the nonbreaching party in the position he or she would have been in had the breaching party fully performed under the contract.' Allied Erecting Dismantling Co., Inc. v. Youngstown (2002),151 Ohio App.3d 16, 31-32, citing F. Enterprises, Inc. v. Kentucky FriedChicken Corp. (1976), 47 Ohio St.2d 154, 159. Generally, the proper measure of damages for breach of a construction contract is the cost of repair. See Ohio Valley Bank v. Copley (1997), 121 Ohio App.3d 197, 210, citing 5 Corbin on Contracts (1964), Section *Page 7 
1089; see, also, McCray v. Clinton County Home Improv. (1998),125 Ohio App.3d 521; Barton v. Ellis (1986), 34 Ohio App.3d 251, 253. In other words, the proper measure of damages is the reasonable cost of placing the structure in the condition contemplated by the parties at the time they entered into the contract. See Hansel v. Creative Concrete Masonry Constr. Co. (2002), 148 Ohio App.3d 53, 59; Sites v. Moore
(1992), 79 Ohio App.3d 694; Apple v. Water World, Inc., Cuyahoga App. No. 80823, 2002-Ohio-6326. As the court stated in Rasnick v. Tubbs
(1998), 126 Ohio App.3d 431, 437: `Generally, a party injured by a breach of contract is entitled to his expectation interest, or "his interest in having the benefit of the bargain by being put in as good a position as he would have been in had the contract been performed." Restatement of the Law 2d, Contracts (1981) 102-103, Section 344.'"Washington County Dept. of Job and Family Services v. Binegar, Washington App. No. 02CA42, 2003-Ohio-2855, ¶ 17.
 {¶ 15} "However, if repair would lead to unreasonable economic waste, damages are measured by the difference in market value between the structure as contracted for and the structure as received." Angles v.West, Pickaway App. No. 02CA16, 2003-Ohio-464, ¶ 9, citing Ohio ValleyBank. Economic waste exists when the cost to remedy the defect is grossly disproportionate to the good to be attained. See Capstone Homes,Inc. v. Ruffin (Apr. 13, 2001), Greene App. No. 2000-CA-101; Toth v.Spitzer (Dec. 18, 1998), Montgomery App. No. 17178.
 {¶ 16} For example, in Toth, the court determined that repair would cause unreasonable economic waste. In that case, the evidence showed that the building did not have any structural problems and that it was functional, even *Page 8 
though it did not meet the precise contract specifications. As a result, the court concluded that because the cost to tear up and replace the structure was grossly disproportionate to the good to be attained, the difference in value was the proper measure of damages.
 {¶ 17} The court likewise determined in Tru-Built Garage and LumberCo., Inc. v. Mays, (Jan. 27, 1993), Montgomery App. No. 13432, that unreasonable economic waste would occur to award the costs of repair or replacement. The court noted that the contractor substantially complied with the contract by building a garage usable for the purpose intended and that to award the cost to tear out the roof and rafters and rebuild would result in a windfall to the property owner.
 {¶ 18} In Dooley v. Purdum, (Feb. 14, 1997), Champaign App. No. 96CA07, the court determined that economic waste would not occur and, thus, affirmed the trial court's decision to award the cost to repair a driveway, even though the damage award exceeded the original contract price. In that case, the driveway that the contractor installed caused water to run into the garage. The property owner's expert testified that the contractor should have tested the area before installing the driveway to ensure that no water would run into the structure. The trial court found that to correct the water problem, the driveway had to be removed, graded and redone. The trial court determined that the contractor did not perform the work in a workmanlike manner and that he did not substantially comply with the contract. The appellate court thus concluded that because the driveway failed to function properly due to water constantly running into the *Page 9 
garage, the cost to repair was not grossly disproportionate to the good to be attained.
 {¶ 19} In Capstone Homes, the court also determined that unreasonable economic waste would not occur to award the cost to repair masonry work. The evidence showed not only that the brick and mortar color problems presented cosmetic issues with the home, but that bricks were missing and that the mortar was so weak in some areas that it would eventually deteriorate and cause structural problems.
 {¶ 20} Here, the trial court determined that there was "something * * * wrong" with the concrete and that "for some reason the original curing was not adequate." In assessing damages, the court noted that the driveway is functional and that the flaking problem is "cosmetic." The court then determined that the proper measure of damages was not the cost of replacing it with a new driveway, but "the value of the premises as they are now as opposed to what they would have been had the job worked out perfect." However, because the parties did not present any evidence regarding the diminution in value, the court did not award Greenfield any damages on its counterclaim.
 {¶ 21} Some evidence exists in the record to support the trial court's decision. Unreasonable economic waste would occur if the court awarded Greenfield the damages it seeks to rectify a purely cosmetic defect. Unlike the situations in Capstone Homes and Dooley, no evidence exists that the concrete driveway lacked functionality or structural integrity. Consequently, the trial court's failure to award Greenfield damages for the cost of replacing the driveway is not against *Page 10 
the manifest weight of the evidence. Additionally, because Greenfield failed to present any evidence regarding the diminution in value, the trial court's failure to award this measure of damages is not against the manifest weight of the evidence. See South Shore Cable Const., Inc.v. Grafton Cable Communications, Inc., Lorain App. No. 03CA8359,2004-Ohio-6077, ¶ 29 (stating that if a party fails to present evidence of diminution in value, then the trial court may properly dismiss that party's claim).
 {¶ 22} Accordingly, we overrule Greenfield's sole assignment of error.
 III. {¶ 23} In his sole assignment of error, Short contends that the trial court erred in interpreting the contract. In particular, he complains that the trial court improperly interpreted the contract so as to require him to use dirt in which grass would grow.
 {¶ 24} Our role in interpreting a contract is to give effect to the contracting parties' intent. See, e.g., Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. In doing so, we must examine the contract as a whole and presume that the language used reflects the parties' intent. Id., citing Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. "We look to the plain and ordinary meaning of the language used in the [contract] unless another meaning is clearly apparent from the contents of the policy." Id., citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph two of the syllabus. When the words used are clear, we "may look no further than the writing itself to find the intent of the parties." Id. As a matter of law, a contract is *Page 11 
clear and unambiguous if it can be given a definite legal meaning. Id. The interpretation of a clear, unambiguous contract is a question of law that we review de novo. See, e.g., Latina v. Woodpath Dev. Co. (1991),57 Ohio St.3d 212, 214.
 {¶ 25} Conversely, when a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. Galatis at ¶ 12, citing Shifrin v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635. We may not, however, "alter a lawful contract by imputing an intent contrary to that" the parties expressed. Id. Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible to more than one interpretation. Ritchie's Food Distributor, Inc. v.Refrigerated Const. Services, Inc., Pike App. No. 03CA713,2004-Ohio-2261, ¶ 12, citing U.S. Fid. Guar v. Aultman St. ElizabethMed. Ctr. (1999), 129 Ohio App.3d 45, 55. Moreover, when the contract is "standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Galatis at ¶ 13.
 {¶ 26} Generally, the fact finder must resolve ambiguity in a written contract. Id.; see, also, Crane Hollow, Inc. v. Marathon AshlandPipeline, LLC (2000), 138 Ohio App.3d 57, 74. Thus, a trial court's interpretation of an ambiguous term within a contract ordinarily is entitled to deference.
 {¶ 27} Here, the disputed contract provision specified that Short was to "[p]roperly grade all disturbed areas, seed and straw." Another provision stated: *Page 12 
"At Grassy areas: Backfill with #57 gravel under, dirt along sides and to top of culvert, compact to 100 psi." The court seems to have relied upon the plain and ordinary meaning of these terms. The court looked to the dictionary definition of dirt and concluded that "dirt" meant "something in which vegetation would grow." The court observed that the photographic evidence demonstrated that grass did not grow in the disturbed areas and concluded that Short did not use "dirt," but instead used fill. We do not believe that the trial court erred in interpreting the contract. The contract specified that Short was to use "dirt." As the court noted, the common meaning of "dirt" is not the same as "fill," which the court determined Short used.
 {¶ 28} Accordingly, we also overrule Short's sole assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 13 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED. Defendant-Appellant/Appellee and Plaintiff-Appellee/Appellant shall equally pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion.
 *Page 1