OPINION
{¶ 1} Plaintiff-appellant, Whitestone Company, appeals from a judgment of the Franklin County Municipal Court in favor of defendant-appellee, Allison Stittsworth, and asserts three assignments of error:
 (I) The Trial Court erred in directing a verdict against Appellant.
 (II) The Trial Court erred in granting judgment to Appellee on her Counterclaim.
 (III) The Trial Court erred in awarding attorney's fees to Appellee.
 {¶ 2} On August 4, 2000, defendant entered into a lease agreement with RZ Realty, plaintiff's real estate management company. At the time, plaintiff was in the process of renovating the rental property; accordingly, the one-year lease term did not begin until October 1, 2000. The lease provided for payment of monthly rent in the amount of $700 and a concomitant security deposit of $700. Defendant vacated the premises when the lease expired on September 30, 2001.
 {¶ 3} On November 12, 2004, plaintiff filed a complaint alleging defendant owed $3,653 ($4,353 less the $700 security deposit) for late fees and property damage/repairs under the terms of the lease agreement. Defendant filed an answer denying plaintiff's allegations and asserted a counterclaim alleging, as pertinent to this appeal, plaintiff wrongfully withheld her security deposit in violation of R.C. 5321.16(B.)
 {¶ 4} The case was tried to the court on December 8, 2005. At the close of plaintiff's case-in-chief, defendant moved for a directed verdict; the trial court granted the motion and dismissed plaintiff's complaint. The case then proceeded on defendant's counterclaim. At the close of the evidence, the court found in favor of defendant. Without objection from the parties, the court determined the issue of attorney fees would be resolved by affidavit.
 {¶ 5} The court memorialized its oral rulings in a written decision issued February 2, 2006; therein, the court acknowledged it granted a directed verdict for defendant at the close of plaintiff's case-in-chief and dismissed plaintiff's claims. The court further determined defendant proved her right to recover on her counterclaim by a preponderance of the evidence and that plaintiff failed to prove that defendant caused the alleged damage to the property which formed the basis for the security deposit deduction and additional charges. Accordingly, the court determined, pursuant to R.C. 5321.16(C), defendant was entitled to recover double the security deposit, or $1,400, along with reasonable attorney fees. The court ordered counsel for defendant to submit an affidavit for attorney fees within seven days of the date of the decision and allowed counsel for plaintiff 14 days from the date of service of the affidavit to file an opposition.
 {¶ 6} On February 9, 2006, defense counsel filed an affidavit and accompanying exhibits in support of attorney fees in the amount of $5,989.76. Plaintiff filed a response on March 6, 2006. By entry filed April 4, 2006, the trial court acknowledged defendant's entitlement to attorney fees pursuant to R.C. 5321.16(C) following the court's judgment on her security deposit counterclaim. Upon consideration of evidence submitted by affidavit, the court granted attorney fees of $5,989.76.
 {¶ 7} Plaintiff's first and second assignments of error are interrelated and will be addressed together. Landlord/tenant conflicts are governed by R.C. Chapter 5321, which embodies what is commonly known as the Ohio Landlord-Tenant Act. Vardeman v. Llewellyn (1985),17 Ohio St.3d 24, 26. The Act codifies Ohio law regarding rental agreements for residential premises and governs the rights and duties of both landlords and tenants. Id. Subsections (B) and (C) of R.C. 5321.16 address termination of the tenancy, including the rights and duties of the landlord and tenant as to the disposition of rental security deposits. Id. Those provisions provide, in pertinent part, as follows:
 (B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorney fees under division (C) of this section.
 (C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorney fees.
 {¶ 8} R.C. 5321.16(B) permits a landlord to apply the security deposit in payment of any past due rent and for damages caused by the tenant's failure to comply with R.C. 5321.05 or the rental agreement. Id. at 27. R.C. 5321.16(B) also requires that the landlord, within 30 days after termination of the rental agreement and delivery of possession, submit a written itemization and identification of deductions from the security deposit to the tenant together with the amount due the tenant. Id. R.C.5321.16(B) further requires the tenant to provide the landlord with a forwarding address; the failure to do so, while not foreclosing the tenant's right to recovery of the security deposit, precludes the tenant from seeking damages and attorney fees as provided in R.C. 5321.16(C.) Id.
 {¶ 9} In Smith v. Padgett (1987), 32 Ohio St.3d 344, the tenants conceded the landlord provided them an itemized list of deductions, but claimed that doing so was insufficient to constitute full compliance with R.C. 5321.16(B.) The tenants maintained that a landlord who fails to refund the correct "amount due" from the security deposit has "wrongfully withheld" the amount owing, thus triggering the R.C.5321.16(C) penalties. Id. at 348. The court acknowledged that inVardeman, supra, it held that "a landlord who both wrongfully withholds a portion of a security deposit and fails to timely provide the tenant with an itemized list of deductions is liable for damages equal to twice the amount wrongfully withheld and for reasonable attorney fees." Id. at 348-349. The "amount wrongfully withheld" under R.C. 5321.16(C) is defined as "the amount found owing from the landlord to the tenant over and above any deduction that the landlord may lawfully make." Id. at 349, footnote 5, quoting Vardeman, at 29. The court further noted that its holding in Vardeman was based upon the reasoning that "part of the General Assembly's intent in enacting R.C. 5321.16(B) and (C) was `to provide a penalty by way of damages and reasonable attorney fees against a noncomplying landlord for the wrongful withholding of any or all of the security deposit.' " Id., quoting Vardeman, at 28.
 {¶ 10} The Padgett court concluded that "[a] landlord should not be allowed to escape the intent underlying the R.C. 5321.16(C) penalties by making a list of deductions. A landlord will not be deterred from making unfounded deductions from a security deposit if the penalties provided by R.C. 5321.16(C) can be avoided by tendering a list of facially justifiable reasons for the deductions." Id. The court expressly held that "under R.C. 5321.16(B) and (C), a landlord who wrongfully withholds a portion of a tenant's security deposit is liable for damages equal to twice the amount wrongfully withheld and for reasonable attorney fees. Such liability is mandatory, even if the landlord gave the tenant an itemized list of deductions from the deposit pursuant to R.C. 5321.16(B.)" Id. at paragraph three of the syllabus.
 {¶ 11} Plaintiff asserts the trial court erred in granting defendant's motion for directed verdict on the basis that plaintiff failed to provide sufficient evidence to substantiate its damage claims. We note preliminarily that a motion for a directed verdict pursuant to Civ.R. 50(A)(4) is inappropriate in a non-jury trial. Johnson v. Tansky SawmillToyota, Inc. (1994), 95 Ohio App.3d 164, 167; Rohr v. Schafer (June 28, 2001), Franklin App. No. 00AP-1059. The proper motion for judgment at the conclusion of a plaintiff's case in a non-jury trial is one for dismissal under Civ.R. 41(B)(2). Johnson; Rohr. The distinction between a Civ.R. 41(B)(2) dismissal and a Civ.R. 50(A)(4) directed verdict is crucial, as the two require different standards to be employed by both the trial court and the appellate court. Johnson; see, also, Cooper v.Smith, 155 Ohio App.3d 218, 2003- Ohio-6083, at ¶ 8.
 {¶ 12} In considering a motion for directed verdict, the trial court construes the evidence most strongly in favor of the non-moving party, and must sustain the motion if it finds that reasonable minds could come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 50(A)(4); Fenley v. Athens Cty. GenealogicalChapter (May 28, 1998), Athens App. No. 97CA36. Under Civ.R. 50, the court is not the trier of fact and does not weigh the evidence.Johnson, supra. A motion for directed verdict tests the legal sufficiency of the evidence to go to the jury and therefore presents a question of law which is reviewed independently, i.e., de novo, on appeal. Fenley, supra.
 {¶ 13} In contrast, under Civ.R. 41(B)(2), the trial court does not view the evidence in a light most favorable to the plaintiff; rather, the trial court is the trier of fact and may weigh the evidence to determine whether the plaintiff has made out its case by a preponderance of the evidence or the otherwise applicable burden of proof.Rohr, supra; P. W.F., Inc. v. C.S.U. Pizza, Inc., (1993),91 Ohio App.3d 724, 731. A Civ.R. 41(B)(2) dismissal will not be set aside unless it is incorrect as a matter of law or is against the manifest weight of the evidence. Johnson, supra; Rohr, supra; P. W.F.,Inc. at 732.
 {¶ 14} An appellate court's standard of review on a manifest weight of the evidence challenge is whether there is some competent, credible evidence to support the trial court's decision. Rohr, supra. Since the trial judge is best able to view the witnesses and observe their demeanor when weighing the credibility of testimony, there is a presumption that the findings of the trier of fact are correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 15} "There is no prejudice if a trial court erroneously applies the Civ.R. 50(A) standard for directed verdict instead of the standard for involuntary dismissal under Civ.R. 41(B)(2) because the directed verdict standard is much more rigorous than the involuntary dismissal standard. * * * Satisfaction of the Civ.R. 50(A) standard implies satisfaction of the Civ.R. 41(B)(2) standard. * * * ." Fenley, supra; see, also P. W.F., Inc., at 731 ("Although the court treated C.S.U. Pizza's motion for a directed verdict when it should have applied Civ.R. 41(B)(2), we fail to see the harm when the former involves a more vigorous standard than the latter."). Further, plaintiff has not assigned as error whether the trial court applied the correct standard in sustaining defendant's motion. Johnson, supra. Accordingly, for purposes of this appeal, we will treat the trial court's dismissal as one pursuant to Civ.R. 41(B)(2.) Id.
 {¶ 16} In its case-in-chief, plaintiff presented the testimony of two witnesses, plaintiff's property manager, Dan Corey, and defendant, as upon cross-examination. Plaintiff also submitted two exhibits, the lease agreement (Plaintiff's Exhibit A) and the itemized damages statement (Plaintiff's Exhibit B.)
 {¶ 17} The lease agreement set forth the terms and conditions of defendant's tenancy. As pertinent here, the agreement provided that any rental payment received after the fifth of the month would be subject to a $50 late charge. Paragraph five of the agreement required defendant to pay a security deposit that could be applied by plaintiff toward any damages to the premises and provided that defendant would be liable for damages in excess of the amount of the security deposit. Further, paragraph ten of the agreement required defendant to keep the premises neat, clean and sanitary, to dispose of rubbish, garbage and organic waste in a clean, safe, and sanitary manner, to assume the cost of plumbing problems caused by her own negligence, to keep carpeting clean and in good condition, and to refrain from destroying, defacing, damaging or impairing any part of the premises or the facilities and appurtenances thereto. Paragraph ten further provided that defendant would be responsible for any damage to the premises caused by her neglect and specified the rate ($35 per hour) to be charged defendant to make repairs. Paragraph 12 prohibited defendant from painting or driving nails into the walls without plaintiff's prior written consent. Paragraph 13 required defendant to obtain plaintiff's written consent to keep a pet on the premises, to pay an additional refundable $250 deposit, to pay an additional $10 rent per month per pet, and to remove pet waste from the premises; failure to remove pet waste would subject defendant to an additional charge of $10 per month per pet.
 {¶ 18} Corey testified that plaintiff had extensively renovated the premises immediately prior to defendant's tenancy; accordingly, it was in "excellent condition" when defendant moved in. (Tr. 16.) The renovation included installation of new drywall, appliances, fixtures, lighting, and carpet; in addition, the walls were painted with primer and two coats of paint.
 {¶ 19} Corey further testified that at the commencement of the lease term, plaintiff gave defendant permission to "do some decorating" on the condition she restore the premises to their original state upon termination of the lease. (Tr. 17.) He further testified plaintiff was aware defendant had a dog when she moved in, but never charged her the additional $250 deposit.
 {¶ 20} Corey averred that at the expiration of the lease term, defendant left the premises in "very poor condition." (Tr. 21.) According to Corey, defendant completely covered the walls with "designing paint," which "looked like a circus, almost borderline vandalism." (Tr. 23.) Upon her departure, defendant unsuccessfully attempted to cover some of the walls with primer paint. Corey further averred there were "a lot of beer bottles" * * * "[b]urns in the floor[,] * * * a plumbing problem, * * * [and] mice infestation from * * * animal food being everywhere." Id. He further stated defendant "broke a lot of things" and left wet towels on a $500 custom-painted handrail. Id. In addition, the deck "had some type of burns and wax in it." (Tr. 24.)
 {¶ 21} Corey testified that within 30 days of defendant terminating the lease, plaintiff provided an itemized statement of property damage and the costs associated with repairing said damage. (Plaintiff's Exhibit B.) To that end, the statement included general charges as follows: $225 for late fees (9 months x $25/month), $240 for pet waste removal (12 months x $20/month), $250 for uncollected pet deposit, $240 for uncollected monthly pet payment (12 months x $20/month), $450 for rodent extermination, $40 to clean trash and debris from the front yard, $85 to clean trash and debris from the back yard, $125 for "decaying animal and human food initiating large rodent problem," $165 for carpet cleaning and deodorizing, and $233 for lost rental fees (defendant requested ten additional days to paint and clean, but failed to do so.)
 {¶ 22} The statement also included a room-by-room damage assessment. Regarding the kitchen, defendant was charged $60 to clean the refrigerator, $20 to clean the cabinet under the sink, $20 to clean the stove, $75 to paint, $90 to repair a floor burn, and $110 to replace the sink which was allegedly ruined by chemicals. Defendant was also charged $75 to repair damage to the laundry room floor and $45 to paint the laundry room. Regarding the living room/dining room, the statement included charges of $250 to paint, $45 to repair nail holes, and $125 to repair floor scratches. Defendant was also charged $85 to paint the upstairs hallway, $80 to paint the upstairs bathroom, and $180 to remove a large desk, 40 paint cans, and a box of trash from the basement.
 {¶ 23} Regarding the downstairs bath, defendant was charged $70 to repair a hole in the wall, $85 to repair a broken toilet, $50 to repair floor damage, and $60 to paint. As to the master bedroom, the statement charged defendant $60 to repair a carpet rip allegedly made in drilling a hole in the floor, $150 to paint, $75 to repair damage to the trim, and $20 to repair nail holes and replace missing closet doors. As to the spare bedroom, the statement charged defendant $350 to paint, $25 to clean "excessive carpet soil," $75 to repair trim damage, and $20 to repair nail holes and replace missing closet doors. In sum, plaintiff's itemized statement alleged damages to the property in the amount of $4,353, less the security deposit of $700, leaving a balance due of $3,653.
 {¶ 24} Corey admitted he could not produce any invoices or receipts to substantiate the cost of the repairs; he claimed the itemized damage assessment accurately delineated those costs. To that end, Corey testified that most of the repairs at issue were made by day laborers employed by plaintiff and that the repair costs set forth on the damages' statement reflected the laborers' hourly wage multiplied by the number of hours spent on each repair. Corey admitted, however, he could not produce wage statements or any other documentation to precisely verify the wages paid or the hours worked, as the day laborers were typically paid in cash and payment was reflected in plaintiff's accounting system only as "general labor." (Tr. 43.)
 {¶ 25} Defendant admitted she timely received a copy of the damage assessment from defendant. She disputed the charges for repainting the walls; indeed, she testified the walls in all the rooms were primed, not painted, when she moved in; she painted some of the walls during her tenancy but restored them to their pre-tenancy condition upon vacating the premises. She also disputed the charge for pet waste removal; she asserted she routinely cleaned up after her dog and that the alleged pet waste left in the yard was actually ash waste.
 {¶ 26} Based upon this evidence, the trial court concluded that plaintiff failed to present sufficient evidence to sustain its burden of proof on its damages' claim. Plaintiff contends the trial court's decision is against the manifest weight of the evidence. We disagree.
 {¶ 27} A landlord bears the burden of submitting sufficient evidence linking any alleged damage to a tenant's failure to fulfillobligations under R.C. 5321.05 or a lease agreement. Zilka v. Asberry, Huron App. No. H-04-022, 2005-Ohio-1881, at ¶ 9. See, also, Oakwood Management Co.v. Young (Oct. 27, 1992), Franklin App. 92AP-207 ("[I]t was [the landlord's] burden to prove that [the tenant] was responsible for the alleged damages".) Further, a landlord is not entitled to damages for repairs to a rental property where the damages resulted from reasonable wear and tear. Bibler v. Nash, Hancock App. No. 5-05-09, 2005-Ohio-5036, at ¶ 18.
 {¶ 28} In Arrow Concrete Co. v. Sheppard (1994), 96 Ohio App.3d 747,750, the court stated that "in cases * * * in which the party has been able to repair injury to a building, the proper measure of damages will usually be the reasonable costs necessary to restore the structure." InPrawdzik v. II Enterprises, Inc., Franklin App. No. 03AP-1044,2004-Ohio-3318, this court stated "if the trier of fact believes the evidence regarding the cost of repair has been inflated, the trier of fact always has the discretion to adjust the damages accordingly." Id. at ¶ 14.
 {¶ 29} Here, Corey identified the lease agreement and the itemized damages assessment; however, he did not assert that defendant breached any specific lease provision or explain how the lease provisions related to the damages listed on the itemized statement. Indeed, the charges on the damage assessment do not correlate to the charges set forth in the lease agreement. For instance, the lease agreement sets forth a $50 per month charge for late rent; the damage assessment charges only $25 per month. Further, the lease agreement sets forth a $10 per month fee for cleaning pet waste; the damage assessment charges defendant $20 per month for this service.
 {¶ 30} Moreover, although Corey testified generally about the condition of the premises both before and after defendant's tenancy, he did not testify as to how those general conditions related to, or were reflected in, the charges assessed against defendant. For example, Corey testified that defendant damaged a $500 handrail by hanging wet towels on it; however, handrail damage is not an item on the damage statement. Further, Corey did not testify as to how the condition of the premises after defendant's tenancy deviated from the conditions expected as a result of normal wear and tear.
 {¶ 31} Although Corey attempted to explain how plaintiff arrived at the repair costs included on the assessment, the explanation did not relate to the $35 per hour repair charge set forth in the lease agreement. Further, plaintiff presented no photographs of the damage as evidence of its claims, and Corey admitted that plaintiff could not produce any invoices, receipts, wage statements or any other documentation to substantiate the cost of the repairs. Moreover, plaintiff did not present the testimony of any of the personnel who allegedly cleaned, repaired or painted the property regarding the extent of the damage allegedly caused by defendant or the actual cost to restore the premises to its pre-tenancy condition. In addition, defendant specifically refuted the charges on the itemized statement.
 {¶ 32} As noted, plaintiff bore the burden of submitting evidence of the reasonable cost of repair or replacement to abate the alleged damage to the premises during its case-in-chief. In dismissing plaintiff's complaint, the trial court apparently did not find the cost of repairs set forth on the itemized damage assessment statement or Corey's testimony as to how the alleged damages were calculated to be reasonable or credible. In contrast, the trial court evidently found defendant's testimony disputing the charges to be believable. Such is the province of the trial court. It is settled law that the finder of fact is free to believe all, part, or none of the testimony of the witnesses who appear before it. State v. Wiley, Franklin App. No. 03AP-340, 2004-Ohio-1008, at ¶ 48. The trial court, having weighed all the evidence, apparently concluded that plaintiff failed to offer sufficient evidence linking any alleged damage to the premises to defendant's failure to fulfill her obligations under the lease agreement.
 {¶ 33} Plaintiff next asserts the trial court erred in entering judgment for defendant on her security deposit counterclaim. Defendant alleged in opening statement she was entitled to return of her entire security deposit because plaintiff could not substantiate any of the items listed on its damage assessment. Plaintiff immediately moved for dismissal of defendant's counterclaim, asserting that defendant was not so entitled because the evidence in plaintiff's case-in-chief established that plaintiff complied with R.C. 5321.16(B) by timely providing defendant an itemized statement of damages. Plaintiff further argued that defendant's counterclaim was barred bythe equitable doctrines of waiver, laches, and estoppel. The trial court overruled plaintiff's motion and the case proceeded to the presentation of evidence.
 {¶ 34} To that end, defendant averred that at the commencement of her tenancy, the second floor was unfinished, there was no carpeting on the stairs or in the bedrooms, and the stairway handrail had not yet been installed. Defendant presented photographic evidence to substantiate these claims (Defendant's Exhibits 4-8.) Defendant further testified there were burn holes on portions of the hardwood floors that had been sealed over with polyurethane. In an effort to demonstrate she improved the property (at her own expense) rather than damaged it during her tenancy, defendant averred she made improvements to both the front and back yards. Defendant submitted photographic evidence of these improvements (Defendant's Exhibits 9-24).
 {¶ 35} Defendant averred she did not pay a pet deposit as required under the lease, but was notified only once of her need to do so; she was never charged a monthly pet fee. She further averred she routinely removed pet waste and that plaintiff did not remove pet waste on a monthly basis.
 {¶ 36} Defendant further testified that shortly after her tenancy began, plaintiff unsuccessfully attempted to install a cabinet in the first floor bathroom; in the process, plaintiff made a sizable hole in the bathroom wall which was never repaired; plaintiff merely covered the hole with a mirror. Defendant submitted photographic evidence of this project. (Defendant's Exhibits 34-37.) Defendant further averred the premises were infested with mice at the end of the tenancy; she notified plaintiff of the problem, but when plaintiff did not respond, she resolved the problem herself.
 {¶ 37} Defendant further testified that upon terminating the lease, she thoroughly cleaned the appliances and the kitchen, removed all trash, removed all nails from the walls and re-primed the painted walls. Defendant averred plaintiff removed the closet doors when installing the carpet and never re-hung them; when she moved out, she leaned them against the closet. (Exhibit 43.) Defendant further averred she left a large desk in the basement because she could not remove it.
 {¶ 38} Defendant denied she was late with her rent nine times; she admitted to being late only "a couple of times." (Tr. 108.) She further denied leaving decaying pet and human food in the kitchen and trash and debris in the front yard. She also denied that she agreed to pay an additional ten days' rent to stay on the premises after the lease expired. She further denied she ruined the kitchen sink with chemicals, broke the toilet, left 40 paint cans in the basement, and painted the kitchen and laundry room.
 {¶ 39} Defendant admitted she accidentally burned a hole in the kitchen floor; however, she notified plaintiff after the incident, with no results. She also admitted some damage to the laundry room, but described it as "normal wear and tear." (Tr. 119.) She further admitted there were "normal" scratches on the living room floor and soiled carpet in the bedrooms; however, she attributed the condition of the master bedroom carpet to "normal wear and tear" and the condition of the spare bedroom carpet to "dirt from construction work." (Tr. 112.) She further admitted she did not fill nail holes, but averred she covered them with primer paint. Defendant also acknowledged she lifted the bedroom carpet from the molding to drill a small hole in the floor for cable access; however, she denied she "ripped" the carpet. (Tr. 120.) She also admitted she did not clean and deodorize the carpet when she vacated the premises; however, she vacuumed the carpet and was not instructed to clean more thoroughly. Shortly after she received the damages statement from plaintiff, she e-mailed Corey and disputed nearly every item. (Defendant's Exhibit 49.)
 {¶ 40} Defendant's husband, Erik Nell, generally corroborated defendant's testimony regarding the condition of the premises upon commencement and termination of the lease and the denials and/or explanations of the items on the damages statement. In further dispute of the damages charges, Nell asserted defendant paid the rent late only one time in order to protest plaintiff's failure to timely install carpeting and that plaintiff's contractors were responsible for scratches on the floors.
 {¶ 41} Corey identified several photographs which purportedly depicted damage to the premises during defendant's tenancy; plaintiff averred he took the photographs after defendant moved out. (Plaintiff's Exhibits D-P.) According to Corey, the photographs depict water damage to the laundry room floor, a burn mark on the kitchen floor, "crazy" paint in the living room, dark purple paint in the upstairs bathroom, rust stains on the carpet and floor and dark brown paint in the master bedroom, rodent droppings in the kitchen, chemical stains in the kitchen sink and countertop, a dirty refrigerator and range, barbeque damage to the deck, and pet waste and trash in the yard. On rebuttal, defendant testified plaintiff's photographs depicted the premises before she finished cleaning and repainting.
 {¶ 42} Plaintiff first argues the trial court should have found defendant's counterclaim was barred by the equitable defenses of laches, estoppel, and waiver. More particularly, plaintiff claims defendant's counterclaim was barred by her failure to demand the return of her security deposit soon after she vacated the premises in September 2001 rather than waiting to assert it only as a counterclaim to plaintiff's complaint.
 {¶ 43} " `In order to successfully invoke the equitable doctrine of laches, it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by an unreasonable and unexplained delay of the person asserting his claim.' " Goff v.Walters (Oct. 28, 1998), Summit App. No. 18981, quoting Seegert v.Zietlow (1994), 95 Ohio App.3d 451, 457. Similarly, to establish equitable estoppel, the movant must demonstrate that there was "a misleading communication that is relied upon and thereby results in prejudice to the other party." Goff, supra. Plaintiff has failed to demonstrate it was materially prejudiced by defendant's delay in asserting her claim for return of her security deposit. There is no evidence or suggestion in the transcript, record, or plaintiff's argument that plaintiff suffered any prejudice as a result of defendant waiting to assert her claim until plaintiff initiated its lawsuit. Indeed, plaintiff waited almost three years to file its claim, and the record reveals that both parties were fully prepared to litigate both plaintiff's complaint and defendant's counterclaim. Furthermore, a delay in asserting a claim, in and of itself, is insufficient to establish a material prejudice. Crozier v. Hafer (Mar. 31, 1999), Wayne App. No. 98CA0013, citing Smith v. Smith (1959), 168 Ohio St. 447, paragraph three of the syllabus.
 {¶ 44} The doctrine of waiver requires "the voluntary relinquishment of a known right, or the doing of acts inconsistent with an assertion of that right." (Id.) There is no evidence or suggestion in the transcript, record, or plaintiff's argument that defendant voluntarily relinquished her right to the return of her security deposit or that she did acts inconsistent with that right. As noted, defendant denied the damage allegations via e-mail shortly after receiving the list from plaintiff.
 {¶ 45} Plaintiff further contends the trial court's judgment for defendant on her counterclaim is against the manifest weight of the evidence. As noted, the trial court found that defendant established her right to recover on her counterclaim by a preponderance of the evidence and that plaintiff failed to prove that defendant caused the alleged damage to the property which formed the basis for the security deposit deduction and additional charges. The issue thus resolves to whether the evidence supports these conclusions.
 {¶ 46} In its ruling from the bench, the trial court engaged in an extensive evaluation of the evidence submitted by the parties with regard to each of the items listed on the damage assessment. (Tr. 259-265.) The court appropriately considered the weight to be afforded the evidence and the credibility of the witnesses in concluding that plaintiff had failed to substantiate any of the damage items. Upon this conclusion, the trial court determined that defendant was entitled to the return of her security deposit and damages equal to the amount of the security deposit.
 {¶ 47} Further, in its written decision, the court found that plaintiff "presented no persuasive admissible evidence proving or even indicating that Defendant * * * caused the alleged damages and Defendant * * * credibly denied causing them." (February 2, 2006 Decision, at 3.) The court further found "[w]here the Court heard any evidence of actual damage, it was in the form of conflicting testimony and evidence, and the Court finds Defendant['s] testimony and evidence more credible than the explanations offered by Plaintiff. Id. The court further found that "[f]or each item of damage alleged by Plaintiff, Plaintiff * * * failed to meet its burden to demonstrate by a preponderance of the evidence that Defendant * * * had actually damaged the property beyond normal wear and tear and that the assigned charges and deductions from her security deposit were justified." Id. at 4. Finally, the court found that "Defendant * * * met her burden and credibly demonstrated that her security deposit in the amount of $700.00 was wrongfully withheld by Plaintiff * * *. Id.
 {¶ 48} Plaintiff argues the trial court erred in "deeply discounting" and/or "completely ignoring" its evidence (Plaintiff's Brief at 11), and further contends the trial court "inexplicably absolved" defendant of any responsibility for the damages she caused to the premises. Id. at 12. As noted previously, the weight to be afforded evidence and witness credibility are issues within the province of the trial court. In both its oral ruling and its written decision, the trial court clearly articulated its conclusions regarding the weight it afforded the parties' evidence and thecredibility of the witnesses who testified at trial. The trial court, as the trier of fact, was free to believe the evidence and testimony submitted by defendant over that of plaintiff.Wiley, supra. Upon review of the record, we cannot find that defendant's evidence was either incompetent or incredible. Accordingly, there being competent, credible evidence going to all the essential elements of defendant's case, we cannot say that the trial court's judgment is against the manifest weight of the evidence. Rohr, supra. The first and second assignments of error are not well-taken.
 {¶ 49} Plaintiff's third assignment of error asserts the trial court erred in awarding defendant all of her attorney fees. Plaintiff contends R.C. 5321.16(C) authorizes attorney fees attributable only to defendant's security deposit counterclaim, not those fees attributable to defending against plaintiff's damages action. Plaintiff further asserts an award of $5,989.76 on a $1,400 recovery is unreasonable under both R.C. 5321.16(C) and DR 2-106 of the Ohio Code of Professional Responsibility.
 {¶ 50} In response to the trial court's February 2, 2006 order, counsel for defendant timely filed an affidavit and accompanying exhibits in support of attorney fees in the amount of $5,989.76. More specifically, defendant's trial counsel, Elizabeth I. Cooke, asserted that in August 2005, she agreed to accept defendant's case in the civil law clinic at the Moritz College of Law at The Ohio State University at an hourly rate of $150. She further attested she expended a total of 17.3 hours defending plaintiff's lawsuit and pursing a counterclaim to recover defendant's wrongfully withheld security deposit. Cooke further asserted she supervised the work and reviewed the time records of legal interns who charged $75 per hour. She further attested the interns expended 9.2 hours on the case; she reduced the interns' actual billable hours significantly to ensure no double billing and to account for their inexperience. Cooke further stated the clinic incurred trial preparation costs of $36.75. In sum, the clinic sought an award of $3,321.75.
 {¶ 51} Cooke further attested that prior to the legal clinic's involvement with the case, defendant was represented by another law firm, Browning Cooke; said representation began in November 2001. In April 2002, Browning Cooke sent a letter to plaintiff's former attorney responding to plaintiff's damage allegations. Plaintiff did not pursue its claims until the instant action was filed in November 2004. Thereafter, defendant again retained Browning Cooke; however, that representation ended in July 2005, when defendant was unable to pay her legal fees. Cooke averred she reviewed billing records and time sheets from Browning Cooke and concluded that for the legal representation beginning in 2001, defendant incurred fees at a rate of $125 per hour for a total of $1,000.54; defendant paid the bill in full. For the second legal representation, defendant incurred fees at a rate of $125 per hour for a total of $1,667.47; defendant paid $1,054.97, leaving a remaining balance of $612.50.
 {¶ 52} Cooke asserted that plaintiff sought a total of $5,989.76 in attorney fees ($3,321.75 to the legal clinic and $2,668.01 to Browning Cooke) and that said fees "are reasonably related to the recovery of Defendant's wrongfully withheld security deposit. Defendant was required to prove the condition of the apartment when Defendant took possession of it and the condition of the apartment when she left in order to refute each of the charges on Plaintiff's alleged damage assessment list." (Cooke affidavit, at ¶ 19.)
 {¶ 53} Cooke attached as an exhibit the affidavit of Andrew P. Cooke, a partner in the law firm of Browning Cooke. He corroborated Cooke's testimony regarding the procedural posture of the case, the hours expended by Browning Cooke in its two representations of defendant, the hourly rate charged, defendant's payment history, and her outstanding balance. Cooke asserted that "[defendant's] total bill for professional services regarding her security deposit and alleged additional charges stemming from her rental of an apartment from [plaintiff] is $2668.01." (Cooke affidavit, Exhibit C affidavit, at ¶ 10.)
 {¶ 54} Based upon this evidence, the trial court awarded plaintiff the total amount of fees requested, finding that said fees were "reasonably related to the recovery of defendant's wrongfully withheld security deposit" and were "fair and customary * * * for work performed for a case in the Franklin County Municipal Court." (April 4, 2006 Entry.)
 {¶ 55} In Padgett, supra, the tenants sought the balance of their security deposit and also set forth a claim for breach of contract. The Ohio Supreme Court held that "[I]f the trial court finds a landlord has wrongfully withheld a portion of the tenant's security deposit, it shall determine the amount of reasonable attorney fees to be awarded on the basis of the evidence presented. Although such determination shall not be reversed except upon abuse of discretion, the award must relate solely to the fees attributable to the tenant's security deposit claim under R.C. 5321.16." Padgett, supra, at paragraph four of the syllabus.
 {¶ 56} This court and others have determined that a tenant may recover reasonable attorney fees under R.C. 5321.16(C) attributable to both the security deposit claim and to defending against a landlord's claim for alleged damages when the two claims are virtually indivisible. SeeCook v. Downey (June 30, 1988), Franklin App. No. 87AP-1075 (a tenant is entitled to recover reasonable attorney fees both in asserting the tenant's claim and in defending against thelandlord's counterclaim for property damage); Lacare v. Dearing (1991), 73 Ohio App.3d 238, 241
(distinguishing Padgett on grounds that the additional fees were attributable to the tenant's additional contract claim rather than defending the landlord's claim for damages); Buck v. Georgian ManorInvestments (Mar. 30, 1995), Cuyahoga App. No. 67170; Opsomer v.Gray (May 29, 1986), Henry App. No. 7-84-20. In Nelson v. Tipton (Nov. 18, 1999), Franklin App. No. 99AP-277, this court provided an example of when a trial court would not abuse its discretion allowing recovery of reasonable attorney fees attributable to both the tenant's security deposit claim and the landlord's claim for damages:
 An example of a case involving indivisible claims would be where the parties merely disputed how much, if any, of the security deposit was returnable. Such dispute may come in the form of two different claims such as a tenant's R.C. 5321.16 security deposit claim and a landlord's property damage/breach of contract claim. The landlord may have withheld part of the security deposit because the tenant allegedly failed to maintain the premises as required under R.C. 5321.05, and the landlord had to expend funds to correct any problems attributable to the tenant. Such funds would be properly withheld from the security deposit. The resulting disputes, even if in the form of two separate claims become virtually indivisible from each other. In such a case, the trial court would not abuse its discretion in granting all of the tenant's reasonable attorneys fees because the claims themselves essentially involve the same subject matter — the security deposit.
(Tipton, at 8.)
 {¶ 57} The circumstances presented in the hypothetical are strikingly similar to those in the instant case. Plaintiff asserted claims for damages allegedly caused by defendant which exceeded the amount of the security deposit; defendant's security deposit counterclaim was totally dependent upon defending against plaintiff's claim. As a result, the fees incurred to defend against plaintiff's claim were essential to the recovery of defendant's security deposit. See Lacare, at 242. Accordingly, we find the claims set forth by plaintiff and defendant to be virtually indivisible from one another; accordingly, defendant was entitled to an award of reasonable attorney fees attributable to both her security deposit claim and to defending plaintiff's damages claim.
 {¶ 58} This determination does not end the matter, however, as we must also determine whether the $5,989.76 award was "reasonable" under the circumstances of this case. This court has determined that a trial court abuses its discretion when the attorney fee award is disproportionate to the actual judgment entered for the tenant. In McGregor v. Armeni (Nov. 20, 1990), Franklin App. No. 89AP-1500, we found attorney fees of $5,809.76 excessive and unconscionable where the tenant sought only $465 on a security deposit claim. See, also, Nelson, supra (trial court abused its discretion when it awarded attorney fees of $26,472.39 on a judgment of only $3,200); Fant v. DiSabato (Dec. 29, 1987), Franklin App. No. 87AP-265 (attorney fee award of $3,712.50 was unreasonable on a $255 net judgment for the tenant); Parks v. Kanani (Mar. 21, 2002), Franklin App. No. 01AP-905 (attorney fee award of $10,000 was excessive on tenant's $1,600 judgment.)
 {¶ 59} More recently, in Ridenour v. Dunn, Franklin App. No. 03AP-611, 2004- Ohio-3375, we considered a case where the trial court entered judgment in favor of the tenant for $255, plus statutory damages of an additional $255. The tenant sought attorney fees in the amount of $4,216.50. Following a hearing at which the tenant's counsel and expert witness testified, the magistrate, upon consideration of the factors set forth in DR 2-106 and the reasoning of Padgett, supra, awarded attorney fees of $1,000. Upon consideration of the landlord's objections, the trial court found the magistrate's decision contained sufficient reasoning to support the award; in so finding, the court noted that the magistrate had considered the factors set forth in DR 2-106. The trial court determined the $1,000 award was less than 25% of the total fees requested and "[bore] a reasonable relation to the successful prosecution of a judgment amount of $510.00." Id. at ¶ 5.
 {¶ 60} On appeal, this court explained that in making a determination as to the reasonableness of attorney fees under R.C. 5321.16(C), the trial court "must first determine the number of hours reasonably expended on the case times a reasonable hourly rate; this provides a useful `objectivebasis on which to make an initial estimate of the value of a lawyer's services." Id. at ¶ 9, quoting Bittner v. Tri-CountyToyota, Inc. (1991), 58 Ohio St.3d 143, 145. "The court may then modify this amount by any pertinent factors listed in DR 2-106(B) of the OhioCode of Professional Responsibility." Id. "All factors may not apply in all cases, and the trial court has the discretion to decide which factors to apply and in what manner its application will affect the initial calculation." Id., citing Bittner, at 145-146.
 {¶ 61} We further explained, citing Parks, supra, that "[t]he trial court must not only conduct the aforementioned analysis of the evidence presented, and the particular circumstances of the case in light of any applicable DR 2-106(B) factors, but in cases where the amount recovered is small compared to the attorney fees assessed, the court must give adequate reasoning as to how it arrived at the specific amount of the award." Id., at ¶ 10. We noted the attorney fee award of $1,000 amounted to nearly four times the amount the landlord was determined to have wrongfully withheld, and almost double the total damages the tenant was entitled to collect. We determined that "[o]n its face, we cannot say that the attorney fee award is an abuse of [the] court's discretion, but it is sufficiently disproportionate to the damages obtained that it raises the question whether it is `reasonable' pursuant toR.C.5321.16(C). "Because the trial court did not sufficiently set forth the method by which it arrived at the conclusion that the $1,000 award was appropriate, we are unable to determine the amount of the trial court's initial objective figure (based on a reasonable number of hours and a reasonable hourly rate), and we are unable to determine which of the DR 2-106(B) factors the court applied, and how the court applied them." Id. at ¶ 11. As such, we concluded that "[u]nder the circumstances of this case, the court should have provided a more specific and detailed explanation of the manner in which it arrived at the $1,000 attorney fee award. Accordingly, * * * we remand this matter for the trial court to provide further finings regarding this amount, or, if the court, upon further consideration of the current record, decides to change the amount of the award, to give its reasons for choosing that specific amount." Id. at ¶ 12.
 {¶ 62} Here, the trial court entered judgment of $700 for return of defendant's wrongfully withheld security deposit, plus an additional $700 in statutory damages. The attorney fees awarded were eight and one-half times the amount plaintiff was determined to have wrongfully withheld, and over four times the total damages to which defendant is entitled to collect. As in Ridenour, we cannot find the attorney fee award, on its face, to be an abuse of the trial court's discretion; however, it is sufficiently disproportionate to the damages obtained to raise a question as to reasonableness under R.C. 5321.16(C.) Indeed, we are unable to determine which of the DR 2-106(B) factors, if any, the trial court applied. Further, the court did not provide any explanation as to why it found the requested fees to be "fair and customary." Thus, we find plaintiff's third assignment of error to be well-taken and remand this matter for the trial court to provide further findings regarding the $5,989.76 award. If, upon further consideration of the current record, the trial court decides to alter the amount of the award, the trial court must provide its reasons for doing so.
 {¶ 63} For the foregoing reasons, defendant's first and second assignments of error are overruled and the third assignment of error is sustained. The judgment of the Franklin County Municipal Court is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with law and consistent with this opinion
Judgment affirmed in part, reversed in part, and remanded.
BRYANT and TRAVIS, JJ., concur.